UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN (TOLEDO) DIVISION

| | | |
|---|---|---|
| FLEXIBLE FOAM PRODUCTS, LLC, | ) | |
| | ) | |
| | ) | **CASE NO:**_____ |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| CHARLES L. MOELLER, | ) | |
| DAVEN E. STEDKE, and | ) | |
| HUME SUPPLY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Flexible Foam Products, LLC ("FFP") for its Complaint for Damages against Defendants Charles L. Moeller ("Lewie Moeller"), Daven E. Stedke ("Stedke"), and Hume Supply, Inc. ("Hume Supply"), allege upon knowledge as to its own acts and otherwise upon information and belief, the following:

## NATURE OF THE ACTION

1. This is an action for violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Ohio Corrupt Activity Law, breach of contract, unjust enrichment, fraud, and breach of duty to perform in a workmanlike manner.

2. FFP is one of the nation's leading foam manufacturing companies, which is originated and whose principal place of business is in Spencerville, Ohio, and at all relevant times, was engaged in and whose activities affected interstate commerce.

1

3. FFP's sole member is Ohio Decorative Products, LLC ("ODP"), whose principal place of business is in Spencerville, Ohio. ODP is also the parent company to Blue Stream Dairy, Inc. ("BSD").

4. ODP's sole member is Moeller Family Limited Partnership, LLP ("MFLP").

5. Defendant Lewie Moeller, a resident of Lima, Ohio, served as President and a member of Board of Directors of ODP and its subsidiaries at various times. Most recently Lewie Moeller served as President and Chief Executive Officer of ODP and its subsidiaries, including FFP and BSD from January 1, 2012 to December 24, 2012.

6. Upon information and belief, Defendant Stedke is the sole shareholder of Hume Supply, who upon information and belief, resides in Ohio.

7. Hume Supply is a construction company, which is incorporated and whose principal place of business is in Lima, Ohio, which performed general contracting services for FFP and Lewie Moeller on various construction projects from 2010 through 2012  At all relevant times, Hume Supply was engaged in and its activities affected interstate commerce.

8. Lewie Moeller is one of the children of Charles D. Moeller ("Chuck Moeller"), the patriarch of the Moeller family, former Chairman of MFLP, and founder of FFP.

9. Until September 29, 2006, Lewie Moeller was a partner in MFLP. The other partners of MFLP include Chuck Moeller's four daughters, Teresa Moeller, Marcia Elliott, Charlene McCullough and Candace Moeller (the "Owners") and their children.

10. The Owners also serve as members of the Board of Directors for ODP and its subsidiaries (the "Board").

11. On October 10, 2005, Lewie Moeller exited his position as President and Director of ODP and its subsidiaries after his personal behavior led to the substantial reduction in his responsibilities that precluded his continued leadership.

12. The Board's actions were taken after it was discovered that Lewie Moeller was abusing drugs and alcohol while in his capacity as an officer of ODP and committed a pattern of self-dealing behavior, including stealing from the company and misuse of company assets and resources, which violated his fiduciary duties to ODP, FFP and the Board.

13. Beginning in or around March, 2010, after several years out of power at ODP, Lewie Moeller devised a scheme with Stedke to defraud ODP, FFP and their respective shareholders. Knowing that the Board would not purposely allow him back in an official capacity with the business at that time, Lewie Moeller devised a scheme with Stedke to launder funds for consulting services through Hume Supply and use a portion of those laundered funds from FFP to pay for a personal construction project at property owned by Lewie Moeller.

14. FFP brings this action to recover damages, attorneys' fees, and punitive damages relating to the Defendants' willful misconduct.

## JURISDICTION AND VENUE

15. Lewie Moeller, Stedke, and Hume Supply are subject to the personal jurisdiction of the Court because they all reside and/or conduct business, including the fraudulent business transactions alleged in this Complaint, in the State of Ohio.

16. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

17. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims asserted occurred in this judicial district.

## FACTUAL BACKGROUND

18. Chuck Moeller founded FFP more than 40 years ago in Spencerville, Ohio. Since that time, FFP has become a national manufacturer of polyurethane foam and carpet cushion products, which are sold to other manufacturers in the flooring, bedding, furniture, automotive, and other commercial industries. FFP now has 11 manufacturing locations throughout the United States.

19. Despite its remarkable growth, FFP maintained its roots as a modest, family-owned, closely-held business. Its worldwide corporate headquarters are still maintained in the same small, 4-bedroom home in Spencerville, Ohio where the company was founded.

20. For many years, Lewie Moeller was part of that Board, and it was his father's desire to transition Lewie Moeller into the role as his successor in charge of the company's daily operations.

21. At Chuck Moeller's insistence, for a significant period prior to October 2005, Lewie Moeller was President and a member of the Board of ODP and FFP, and reported to Chuck Moeller.

22. At that time, however, it became clear to the Board that Lewie Moeller was abusing drugs and alcohol while serving in his capacity as President, and the Board uncovered widespread evidence of Lewie Moeller's self-dealing in violation of his fiduciary duties to ODP, FFP, the Board, and MFLP's Owners – Lewie Moeller's own family members.

23. As a result of his conduct, on or about October 10, 2005, Lewie Moeller was forced to exit his position as President and Director of ODP and its subsidiaries, including FFP. Then, Lewie Moeller's ownership in MFLP ended September 29, 2006, at the time of the

redemption of his ownership interest. At no point after September 29, 2006, was Lewie Moeller an owner of ODP, FFP or any other subsidiary or of any units of MFLP.

24. Since early 2007, the owners of MFLP have remained Teresa Moeller, Marcia Elliott, Charlene McCullough and Candace Moeller (the "Owners") and their children.

25. For the next four years, Lewie Moeller attempted to undermine the sales and operations of FFP.

26. It was not until early 2010 that Lewie Moeller devised a scheme with Stedke to defraud FFP, its Board, and its shareholders of money and property.

## Shadow Consultancy

27. Knowing that the Board would not willingly accept Lewie Moeller back in any official capacity in the business (or to issue any payments to Lewie Moeller), Lewie Moeller and Stedke created a "business relationship" for Lewie Moeller to become a "shadow consultant" within FFP.

28. In an effort to conceal from the Board Lewie Moeller's "shadow consultancy" and money diverted to Lewie Moeller, Lewie Moeller and Stedke devised, and Chuck Moeller agreed to, a "business arrangement" whereby: a) Hume Supply supplied certain construction/remodeling services to improve a building on real estate owned by Lewie Moeller, the costs of which Hume Supply surreptitiously passed off to FFP; b) Lewie Moeller issued certain invoices to Hume Supply, either before or after Hume Supply assessed the same amounts against FFP; and c) Lewie Moeller and Hume Supply together engaged in a contrived process of each issuing invoices (Lewie Moeller issuing invoices to Hume Supply and Hume Supply issuing invoices to FFP).

29. Upon information and belief, in order to conceal this relationship and scheme from the Board, no contract was drafted and no other writing was created to memorialize this business arrangement.

30. Part of Defendants' scheme to secretly transfer benefit and money to Lewie Moeller (and for Defendants' Hume Supply and Stedke to collect money from FFP) involved an unimproved structure located on Lewie Moeller's real estate on State Road 81, Lima, Ohio (a/k/a Allentown Road, Lima Ohio) ("SR 81"). That unimproved structure on SR 81 is hereinafter referred to as the SR 81 Building.

31. As of early 2010, Lewie Moeller was planning with Hume Supply upgrades and improvements to the SR 81 Building. Such upgrades and improvements included a new floor, kitchen/bar accommodations, a restroom, hook-up to sewer, new roof panels, insulation, and an improved area for storage of Lewie Moeller's personal automobile collection.

32. In early 2010, Hume Supply prepared a proposal for work on Lewie Moller's SR 81 Building.

33. Hume Supply began its work on the SR 81 Building in early 2010 and, between February 25, 2010, and March 30, 2010, Hume Supply documented $70,066.15 of work and/or expenses on the SR 81 Building.

34. On July 20, 2010, Hume Supply documented an additional $27,399.30 worth of work on the SR 81 Building.

35. Meanwhile, on March 31, 2010, Hume Supply issued its first invoice to FFP for $71,290, which included no detail other than "AS PER AGREEMENT." FFP paid this invoice on April 1, 2010.

36. Hume Supply's 2010 invoices to FFP related to Lewie Moeller's SR 81 Building and/or phantom consulting by Lewie Moeller are:

| Invoice Hume Supply Mailed to FFP | Amount |
|---|---|
| March 31, 2010 | $71,290 |
| May 12, 2010 | $50,000 |
| July 20, 2010 | $50,000 |

The only description in each of the above invoices was "AS PER AGREEMENT." These invoices were paid by FFP.

37. On May 19, 2010, two days after Hume Supply documented and FFP paid the $50,000 "AS PER AGREEMENT" invoice, Lewie Moeller invoiced Hume Supply for $50,000.

38. On August 2, 2010, 13 days after Hume Supply billed FFP and the same day FFP paid Hume Supply the $50,000 "AS PER AGREEMENT" invoice, Lewie Moeller invoiced Hume Supply $24,000.

39. In 2010, Hume Supply paid Lewie Moeller $74,000 and gave him services and improvements in the amount of $97,290.

40. Thus, in 2010, Lewie Moeller received payments from Hume in the amount of $171,290, and Lewie Moeller invoiced Hume Supply in 2010 for $74,000.

41. Hume Supply issued a 1099 in 2010 to Lewie Moeller for $74,000.

42. Defendant's scheme worked so well in 2010, that in 2011, Hume Supply documented a $26,250 payment to FFP marked "AS PER AGREEMENT." Lewie Moeller got around to issuing his invoice to Hume Supply on April 4, 2011 for that amount.

43. The pattern repeated itself when Hume Supply issued an invoice to Flex for $50,250 "AS PER AGREEMENT" on May 31, 2011, nine days <u>before</u> Lewie Moeller issued an invoice to Hume Supply for that same amount.

44. Of the $247,790.00 paid to Hume Supply, Lewie Moeller invoiced Hume Supply on four different occasions between on or about May 19, 2010 to on or about June 8, 2011, amounts totaling $150,500.00, as follows:

| Date | Amount |
|---|---|
| May 19, 2010 | $50,000 |
| August 2, 2010 | $24,000 |
| April 4, 2011 | $26,250 |
| June 8, 2011 | $50,250 |

45. Hume Supply provided no services to FFP for the payments it received from FFP and improperly deposited those checks in a bank account maintained by Hume Supply and controlled by Stedke.

46. Beginning on or about March 31, 2010 through on or about May 31, 2011, Hume Supply issued invoices entitled simply "AS PER AGREEMENT" to FFP on 5 different occasions in various amounts totaling $247,790.00, and FFP paid the amounts identified in the invoices by check and delivered those checks to Hume Supply by the U.S. Postal Service on 5 different occasions.

## Terrell, Texas Construction Fraud

47. On or about September, 2010, while Lewie Moeller was serving as a "shadow consultant" to his father, FFP's manufacturing plant in Terrell, Texas was damaged by a fire.

48. In his role as "shadow consultant," Lewie Moeller secured Hume Supply – the same company that was making payments to him as their independent contractor to provide consulting services to FFP – the opportunity to bid on the repair of the Terrell, Texas facility.

49. At Lewie Moeller's urging, Chuck Moeller selected Hume Supply as FFP's general contractor on the project.

50.     A proposal, attached hereto as Exhibit A, was submitted by Hume Supply to FFP for their work on the project. FFP accepted the terms of that proposal, and Hume Supply was awarded the Project.

51.     That proposal specified the amounts that FFP was to pay for each phase of the Terrell, Texas construction project, but it did not contain any terms for items, such as tool rental or delay damages.

52.     As the general contractor, it was Stedke and Hume Supply's responsibility to obtain the necessary building permits to perform the scope of work identified in the contract documents.

53.     However, on or about December 16, 2010, Hume Supply began construction on the Terrell, Texas facility without having yet secured the necessary building permits from City of Terrell, Texas building officials.

54.     Stedke assured FFP that he would keep the project on time and on budget and work would not be stopped or delayed because he did not secure the necessary permits at the beginning of the project.

55.     Stedke was wrong. In or around January, 2011, Terrell, TX building inspectors ordered Stedke and Hume Supply to stop work on the project.

56.     Work records maintained by Stedke indicate that the last production work performed by Hume Supply was on or about February 11, 2011. At the time construction stopped, FFP had paid Hume Supply $641,803.30, which included advance payments for work that was never performed.

57.     Yet Stedke and Hume Supply also continued to invoice FFP under the "contract" and for "added expenses," that included among other items, $462.50 a week for apartments that

9

Stedke had leased for his employees but were going unused, $554.09 a week for furniture rentals, $84.50 a week for electricity and $32.07 a week for cable TV for the vacant apartments. Stedke and Hume Supply also invoiced FFP $900 for airline ticket change fees, at least $1,460 for Stedke's travel expenses for a trip to Terrell, and $68,717.79 for Hume Supply's tools left on the project after work was halted.

58. FFP objected to these invoices, but Lewie Moeller in his role at that time as a "shadow consultant" assisted Hume Supply and Stedke in getting all of the invoices paid by FFP. Lewie Moeller knew at the time he recommended approval of the invoices that they were false and contained inflated costs and entries for work that was never performed.

59. Terrell, Texas officials refused to authorize the issuance of building permits to Stedke and Hume Supply and the company was ordered to tear down portions of the new building they had constructed without the City's approval.

60. In total, FFP paid Hume Supply $1,185,459.35 for all of its work on the Terrell, Texas project even though a building was never constructed.

61. Upon information and belief, money paid to Hume Supply by FFP under the Terrell, Texas construction contract was used, in part, by Hume Supply to perform work on Lewie Moeller's personal remodeling project.

62. The invoices issued by Stedke and the approvals for payment given by Chuck Moeller at the recommendation of Lewie Moeller were part of the agreement and scheme between Lewie Moeller and Stedke to defraud FFP of money and property.

**COUNT 1 – VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C.§ 1962(c) & (d))**
**(Lewie Moeller, Stedke, and Hume Supply)**

63. FFP repeats and re-alleges paragraphs 1-62 as though fully set forth herein.

64. At all relevant times, Lewie Moeller was a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) & (d).

65. At all relevant times, Hume Supply and Stedke were persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) & (d).

66. At all relevant times, FFP was an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) & (d).

67. Beginning in or around March, 2010, Stedke, Lewie Moeller, and Hume Supply devised a scheme to defraud FFP of money and property by means of false and fraudulent pretenses.

68. Stedke, Lewie Moeller, and Hume Supply committed that scheme by engaging in a pattern of racketeering activity, as that term is defined by 18 U.S.C. § 1961(5).

69. Specifically, Stedke, Lewie Moeller, and Hume Supply committed two or more acts of mail and wire fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343 respectively.

70. Stedke, Lewie Moeller, and Hume Supply used the U.S. Postal Service for the purpose of executing their scheme to defraud FFP by placing in the mail for delivery by the U.S. Postal Service false and fraudulent invoices for services by Hume Supply that were never provided or purposely inflated to FFP.

71. Further Stedke, Lewie Moeller, and Hume Supply intended, as part of their scheme to defraud FFP, to use their false invoices and misrepresentations to induce FFP into wiring payments to Hume Supply in interstate commerce that Hume Supply, Lewie Moeller, and Stedke were not entitled to keep.

72. Stedke and Hume Supply, who were associated with FFP, conducted and participated in FFP's affairs directly and indirectly through this pattern of racketeering activity.

73. Lewie Moeller, who was associated with FFP, conducted and participated in FFP's affairs directly and indirectly through this pattern of racketeering activity.

74. Additionally, Stedke, Lewie Moeller, and Hume Supply conspired together to engage in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

75. As a result of Stedke, Lewie Moeller, and Hume Supply's acts in violation of 18 U.S.C. § 1962(c) & (d), FFP suffered injuries and is therefore, entitled to recover treble damages it sustained and the cost of the suit, including a reasonable attorneys' fee pursuant to 18 U.S.C. § 1964.

WHEREFORE, FFP respectfully requests the Court enter judgment in favor of FFP against Stedke, Lewie Moeller, and Hume Supply and individually and/or jointly and severally, order Lewie Moeller to divest any interest he maintains in FFP, order Stedke to divest any interest he maintains in Hume Supply, order the dissolution of Hume Supply, and award FFP an amount sufficient to compensate it for its damages, together with prejudgment interest, costs, attorneys' fees, punitive damages, treble damages, and all other appropriate relief as is just and proper.

## COUNT 2 – PATTERN OF CORRUPT ACTIVITIES
### (Violation of Ohio Revised Code § 2923.32)
### (Lewie Moeller, Stedke, Hume Supply)

76. FFP repeats and re-alleges paragraphs 1-75 as though fully set forth herein.

77. Plaintiff FFP realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

78. At all relevant times, Lewie Moeller was a person within the meaning of ORC § 2923.31(G).

79. At all relevant times, Hume Supply and Stedke were persons within the meaning of ORC § 2923.31(G).

80. At all relevant times, FFP was an "enterprise" within the meaning of ORC § 2923.31(C).

81. Beginning in or around March, 2010, Stedke, Lewie Moeller, and Hume Supply devised a scheme to defraud FFP of money and property by means of false and fraudulent pretenses.

82. Stedke, Lewie Moeller, and Hume Supply committed that scheme by engaging in a pattern of corrupt activity, as that term is defined by ORC § 2923.31(E).

83. Namely, Stedke, Lewie Moeller, and Hume Supply committed two or more acts of mail and wire fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343 respectively.

84. Further, Stedke, Lewie Moeller, and Hume Supply committed two or more acts of felony theft in violation of ORC § 2913.02.

85. Stedke and Hume Supply, who were associated with FFP, conducted and participated in the affairs of FFP directly and indirectly through a pattern of corrupt activity.

86. Lewie Moeller, who was associated with FFP, conducted and participated in the affairs of FFP directly and indirectly through a pattern of corrupt activity.

87. As a result of Stedke and Lewie Moeller's acts in violation of ORC § 2923.32, FFP suffered injuries and is therefore, entitled to recover threefold the damages it sustained and the cost of the suit, including a reasonable attorney's fee pursuant to ORC § 2923.34.

WHEREFORE, FFP respectfully requests the Court enter judgment in favor of FFP against Stedke, Lewie Moeller, and Hume Supply and individually and/or jointly and severally, order Lewie Moeller to divest any interest he maintains in FFP, order Stedke to divest any interest he maintains in Hume Supply, order the dissolution of Hume Supply, and award FFP an amount sufficient to compensate it for its damages, together with prejudgment interest, costs, attorneys' fees, punitive damages, treble damages, and all other appropriate relief as is just and proper.

### COUNT 3 – FRAUD
### (Lewie Moeller, Stedke, Hume Supply)

88. FFP repeats and re-alleges paragraphs 1-87 as though fully set forth herein.

89. Lewie Moeller, Stedke, and Hume Supply devised a scheme to defraud FFP of money and property by submitting false invoices for shadow consulting services and construction work that was never performed, using Hume Supply to launder money to Lewie Moeller to which he was not entitled, using Hume Supply to launder money for use in Lewie Moeller's personal remodeling project to which he was not entitled, and submitting false invoices that were grossly inflated and included costs for which Hume Supply was not entitled to be paid.

90. Lewie Moeller, Stedke, and Hume Supply knew their representations to FFP were false and were made with the intent and belief that FFP would rely upon them.

91. In fact, FFP did rely upon them and paid the invoices not knowing they were false.

14

92. FFP suffered damages as a direct result of Lewie Moeller's, Stedke's, and Hume Supply's actions.

WHEREFORE, FFP respectfully requests the Court enter judgment in favor of FFP and against Lewie Moeller, Stedke, and Hume Supply, individually, and/or jointly or severally, and award FFP an amount sufficient to compensate it for its damages, together with prejudgment interest, costs, attorneys' fees, punitive damages and all other appropriate relief as is just and proper.

### COUNT 4 – BREACH OF CONTRACT – TERRELL, TEXAS PROJECT
### (Hume Supply)

93. FFP repeats and re-alleges paragraphs 1-92 as though fully set forth herein.

94. FFP and Hume Supply had a valid and enforceable contract to construct a manufacturing facility in Terrell, Texas, i.e., Exhibit A (attached hereto).

95. FFP performed its obligations under the Terrell, Texas Contract and has at all times been in compliance with its terms.

96. Hume Supply breached its obligations under the Terrell, Texas Contract, as set forth above, by failing to perform the scope of work as described in the contract, failing to obtain the necessary building permits, and invoicing for expenses that were non-allowable and well-above reasonable rates.

97. Hume Supply's breach of the Terrell, Texas Contract injured FFP.

WHEREFORE, FFP respectfully requests the Court enter judgment in favor of FFP and against Hume Supply, individually, and award FFP an amount sufficient to compensate it for its damages, together with prejudgment interest, costs, attorneys' fees and all other appropriate relief as is just and proper

## COUNT 5 – UNJUST ENRICHMENT
### (Stedke and Hume Supply)

98. FFP repeats and re-alleges paragraphs 1-97 as though fully set forth herein.

99. FFP conferred a benefit on Defendants Stedke and Hume Supply in the form of monetary payments.

100. Stedke and Hume Supply had knowledge of those payments, accepted those payments from FFP and retained the benefit of those payments without providing services of a comparable value to FFP.

101. Under these circumstances, Stedke and Hume Supply's retention of these payments without providing services of a comparable value to FFP is unjust and unlawful.

WHEREFORE, FFP respectfully requests the Court enter judgment in favor of FFP and against Stedke and Hume Supply individually, and/or jointly or severally, and award FFP an amount sufficient to compensate it for its damages, together with prejudgment interest, costs, attorneys' fees, punitive damages and all other appropriate relief as is just and proper.

## COUNT 6 – BREACH OF DUTY TO PERFORM IN A WORKMANLIKE MANNER
### (Hume Supply)

102. FFP repeats and re-alleges paragraphs 1-101 as though fully set forth herein.

103. Hume Supply owed FFP a duty to perform its work in a workmanlike manner.

104. Hume Supply breached that duty by failing to obtain the necessary permits on the Terrell, Texas project and complete the project in the manner contemplated by the parties.

105. FFP suffered damages as a result of Hume Supply's breach.

106. FFP is entitled to be returned to the position contemplated by the parties at the time they entered into their contract.

WHEREFORE, FFP respectfully requests the Court enter judgment in favor of FFP and against Hume Supply, individually, and award FFP an amount sufficient to compensate it for its damages, together with prejudgment interest, costs, attorneys' fees and all other appropriate relief as is just and proper

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

*s/ Kathleen M. Anderson*
Kathleen M. Anderson (Ohio Bar #0074422)
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, Indiana 46802
Telephone: (260) 423-9440
Facsimile: (260) 424-8316
Email: kathleen.anderson@btlaw.com

ATTORNEY FOR PLAINTIFF

FWDS01 284743v1