UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FLEXIBLE FOAM PRODUCTS, LLC | : | CASE NO. 3:14-CV-00693 |
| | : | |
| Plaintiff | : | JUDGE ZOUHARY |
| | : | |
| vs. | : | MEMORANDUM IN SUPPORT OF |
| | : | DEFENDANT CHARLES L. |
| CHARLES L. MOELLER, et al. | : | MOELLER'S MOTION TO DISMISS |
| | : | PURSUANT TO FED. R. 12(b)(6) |
| Defendants | : | TO FED. R. CIV. P. 12(b)(6) |
| | : | |

_____

INTRODUCTION

On March 28, 2014, Flexible Foam Products, LLC (hereafter "FFP") filed its Complaint in the United States District Court for the Northern District of Ohio. Pursuant to the provisions of Fed. R. Civ. P. 12 this motion is filed within 60 days of March 28, 2014. In its Complaint, FFP alleges one cause of action against defendant Charles L. Moeller (hereafter "Lewie Moeller"), which purports to be a federal Racketeer Influenced and Corrupt Organization Act (RICO) civil claim thus establishing subject matter jurisdiction. Plaintiff additionally alleges a state RICO claim and a fraud claim against Lewie Moeller. This motion is directed to the federal claim outlined in Count 1 as well as the state claims in Count 2 and 3.

RICO requires a plaintiff to allege with some specificity, criminal conduct by the

1

defendant which demonstrates a pattern of racketeering activity that is related and that amounts to, or has a likelihood of, continued criminal activity. Because FFP's Complaint is vague and conclusory and fails to allege criminal conduct by Lewie Moeller, FFP's claim against him must be dismissed. If Count 1 is dismissed pursuant to this motion, then in that event, the state claims should also be dismissed for want of subject matter jurisdiction.

## FACTS

FFP is a family-owned, closely-held business. (Complaint, ¶19). Charles D. Moeller (hereafter "Chuck Moeller") founded FFP more than 40 years ago. (Complaint, ¶18). Chuck Moeller was Chairman and all employees answered to him. (Complaint, generally ¶¶ 8, 20 & 21). Chuck Moeller agreed to and entered into a business arrangement with Hume Supply/ Daven Stedke wherein Lewie Moeller provided consulting services to FFP. (Complaint ¶¶ 27 & 28). Lewie Moeller was an independent contractor of Hume Supply. (Complaint ¶41).

## LAW AND ARGUMENT

This motion is presented pursuant to Fed. R. Civ. P. 12(b)(6) which provides in pertinent part:

> **(b)** **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> * * *
>
> (6) Failure to state a claim upon which relief can be granted; * * *
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. * * *

In reviewing a complaint, the Court must accept all the allegations of the plaintiff's complaint as true and consider whether such allegations are sufficient to state a claim for relief.

*Bell Atl. Corp. v. Twombly,* (2007) 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed.2d 929. This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, (2009) 556 U.S. 662, 678. 129 S.Ct.1937, 173 L.Ed.2d 868. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (Internal quotation omitted). A plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Twombly,* at 570.

Because the claim against Lewie Moeller involves the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, a general review of the elements which comprise a RICO claim is necessary. RICO imposes criminal and civil liability upon persons who engage in certain "prohibited activities," each of which is defined to include, as a necessary element, proof of a "pattern of racketeering activity," §1962. *H.J. Inc. v. Northwestern Bell Telephone Co.* 492 U.S. 229(1989), 109 S.Ct. 2893, 106 L.Ed.2d 195. "Racketeering activity" means "any act or threat involving" specified state law crimes, any "act" indictable under specified federal statutes, and certain federal "offenses." §1961(1). *Id.*

In RICO, a plaintiff must allege an enterprise. A RICO enterprise includes "any union or group of individuals associated in fact" . . . for a common purpose of engaging in a course of conduct. *Boyle v. United States,* (2009) 556 U.S. 938, 944, 129 S.Ct. 2237, 173 L.Ed.2d 1265. The Supreme Court held that "to conduct or participate, directly or indirectly, in the conduct of such enterprises's affairs, §1962(c), one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* (1993) 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525.

Much emphasis is given to the phrase "pattern of racketeering" in RICO cases. To establish "a pattern of racketeering activity" under 18 U.S.C. § 1962(c), the plaintiff must show "at a minimum, two acts of racketeering activity within ten years of each other." *Heinrich v. Waiting Angels Adoption Servs., Inc.,* 668 F.3d 393, 409 (6th Cir. 2012). The plaintiff must also show that the predicate acts are related, and that they amount to or pose a threat of continued criminal activity. *Id.* These so called "predicate acts" are, by themselves, violations of either federal law or state law. *Columbia Natural Resources, Inc. v. Tatum*, 58 D.3d 1101, 1108 (6th Cir. 1995).

The acts must be related. Acts are related for RICO purposes if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Further the acts must demonstrate continuity. Continuity can be both closed-ended and open-ended. *H. J. Inc.* at 241. A plaintiff shows close-ended continuity "by proving a series of related predicates extending over a substantial period of time." *H.J. Inc.* at 242. Open-ended continuity is "established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *Id.*

Emphasis in the RICO statute is upon "racketeering," "criminal conduct," "criminal act," and a "pattern" of criminal activity, coupled with "relationship and continuity." *Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371, 1374 (6th Cir. 1991), citing *H.J. Inc.* at 242-243.

**A. FFP's RICO claim fails as a matter of law because Lewie Moeller did not engage in criminal conduct.**

Ohio recognizes oral agreements. "Contracts may be written or oral. And while it is

preferable that a contract be memorialized in writing, an oral agreement 'may be enforceable if there is sufficient particularity to form a binding contract.'" *Sullivan v Anderson Township,* 2009-Ohio-6646, ¶17, citing *Kostelnik v. Helper*, 2002-Ohio-2985, ¶15. In *Kostelnik*, the Ohio Supreme Court outlined the elements of an oral contract stating at ¶16, "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." (Further citations omitted). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.* "Terms of an oral contract may be determined from "words, deeds, acts, and silence of the parties." *Id* at ¶15, further citations omitted.

     As stated on the face of FFP's Complaint, Chuck Moeller entered into a business agreement sometime in March, 2010 with Hume Supply to provide consulting services to FFP. (Complaint ¶ 13, ¶ 28). This agreement was while Chuck Moeller was the chairman, founder of FFP and as such, had the authority to conduct the day to day affairs of FFP. Such an oral agreement is well recognized in Ohio. Hume Supply, in turn, retained Lewie Moeller as an independent contractor, to perform the actual consulting services to FFP. Again, this oral agreement was approved by Chuck Moeller as indicated by the various payments from FFP to Hume Supply during the years 2010 and 2011.

     If the Board of FFP was dissatisfied with the oral agreement, then the Board's options included instructing Chuck Moeller how to handle the situation and discontinuing the consulting services. While FFP now claims it ". . . objected to these invoices . . ." from Hume, FFP, with

clear knowledge of the business arrangement paid the invoices. (Complaint ¶58) Because the Board now considers Chuck Moeller's oral agreement with Hume Supply to be a bad business decision, this consideration does not create the foundation for a RICO claim against Lewie Moeller.

Defendant has scoured plaintiff's complaint to locate the final element that Lewie Moeller did not perform the consultant services called for in the oral agreement between FFP and Hume. Lewie Moeller submits that plaintiff has failed to allege that it was "injured in its business or property" as required for a civil RICO damages claim.

18 U.S.C.§1964(c) sets forth the breadth (or limitations) of a RICO claim. One such limitations is "that a plaintiff be injured in his business property. . . ." *Jackson v. Sedwick Claims Management Services, Inc.,* 731 F.3d 556, 563 (6th Cir. 2013). The issues raised as to Lewie Moeller in the instant litigation is whether Congress intended the damages FFP seeks herein to be recoverable under civil RICO. The complaint does not allege Lewie Moeller did not perform his responsibilities as a consultant but, in the final analysis, states that FFP is unhappy with the methodology and costs. Plaintiffs are attempting to use RICO to collateral attack a contract created under state law.

The Board could have decided to discontinue the consulting services, but instead hired Lewie Moeller as President and Chief Executive Officer of Ohio Decorative Products, LLC and its subsidiaries, including FFP from January 1, 2012 to December 24, 2012. (Complaint, ¶5). Again, nothing in the oral agreement between Chuck Moeller for FFP and Hume Supply constitutes criminal conduct and thus the requirements for a RICO claim against Lewie Moeller do not exist. FFP's Complaint must be dismissed as to Lewie Moeller.

**B. FFP's RICO claim against Lewie Moeller fails because the allegations regarding criminal conduct are vague and conclusory.**

The RICO "predicate acts" alleged by FFP are vague and conclusory. Submitting invoices for consulting services and accepting payment for the same services provided pursuant to an oral business agreement does not constitute criminal conduct. In fact, the only suggestion of alleged criminal conduct is found in paragraph 13 of FFP's Complaint in the section labeled "NATURE OF THE ACTION", which states: "* * * Lewie Moeller devised a scheme with Stedke to launder funds for consulting services through Hume Supply and use a portion of those laundered funds from FFP to pay for a personal construction project at property owned by Lewie Moeller." Reduced to its simplest form this alleges Lewie Moeller bartered Hume's goods and services for fees and expenses due Lewie Moeller from Hume.

The elements for money laundering offenses are:

> (1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds.

*United States v. Prince*, 214 F.3d 740, 747, (6th Cir. 2000), citing *United States v. Moss,* 9 F.3d 543, 551 (6th Cir. 1993).

With money laundering, the funds must represent proceeds from some form of activity that constitutes a felony. 18 U.S.C. §1956(c)(1).

FFP's Complaint does not set forth any unlawful activity or criminal conduct by Lewie Moeller which would constitute a felony. Hume Supply's submission of invoices "per agreement" with FFP via its President Chuck Moeller is not a felony. Neither does FFP's payment of those invoices for consulting services constitute a felony. Hume Supply's payments

7

to Lewie Moeller as an independent contractor for his providing consulting services to FFP per the business agreement, does not constitute a felony, whether in cash or barter. Even the combination of completing these steps in furtherance of the oral agreement does not equate to a felony. Without unlawful activity, FFP's Complaint fails to state a claim against Lewie Moeller under RICO.

      The vague "predicate acts" which FFP alleges could hardly be said to be a criminal activity at all. In *Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371 (6th Cir. 1991), the Sixth Circuit Court of Appeals affirmed the District Court when it dismissed plaintiffs' Complaint because the allegations were vague and conclusory regarding plaintiffs' RICO claim. *Palmer* involved an insurer's alleged breach of policy (contract) claims and, while not factually on point, the analysis by the Sixth Circuit is helpful in the case at bar. The Sixth Circuit stated that the allegations in plaintiffs' Complaint were vague and conclusory. *Id.* at 1374. "The allegations about a course or pattern of conduct by * * *, the alleged enterprise, and it agents * * * make no specific reference to criminal violations; rather, they involve conclusory suppositions that the communications involved falsities, misrepresentations, or concealments." *Id.*

      The *Palmer* litigation involved contract claims by the plaintiff against their insurer (Nationwide), the insurer's employees and attorney. The crux of the claim under RICO was that the plaintiffs alleged fraud and extortion by the various defendants as RICO activity. The case at bar involves, as pleaded in the Complaint, an oral contract between FFP through Chuck Moeller with Hume Supply to furnish FFP consultant services, and to use Lewie Moeller who had previously managed FFP until October 10, 2005 due ". . . to the substantial reduction in his responsibilities that precluded his continued leadership." (Compl. ¶11). Noticeably plaintiff

does not allege how long Lewie Moeller led FFP for the family but there is nothing criminal about Chuck Moeller bringing his son back in 2010 as a consultant through an agreement with Hume.  It may have been bad business, or even a possible breach of fiduciary duty by Chuck Moeller to FFP, Ohio Decorative Products and/or the Moeller Family Limited Partnership.  However, it is not criminal conduct sufficient to satisfy the specificity requirement of RICO.

In *Palmer*, the Sixth Circuit characterized plaintiffs' claims as more akin to claims for breach of contract.  "The character of an action as one in tort or an action ex-contractor is determined by whether it arises from the breach of some agreement of the parties". . . it is no tort to breach a contract, regardless of motive.  A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed . . . when the promisee's injury consists merely of the loss of his bargain, no tort claim arises . . ." *Id.* at 1375.  (Further citations omitted).   The Sixth Circuit summarized plaintiffs' allegations by stating: "These actions are essentially breaches of contract, or a kind of failure to perform a species of fiduciary duty arising from the contractual obligation." *Id.*

The analysis in *Palmer* is applicable to the case *sub judice*.  FFP's allegations describe breach of contract claims or breach of fiduciary duty at best, not unlawful activity.  As to "predicate acts," FFP's allegations are vague and conclusory.   There is no basis for treating acts of the kind described as performed by Lewie Moeller in plaintiff's complaint to be a RICO violation or predicate criminal conduct. *Palmer* at 1374.

**C.  FFP's RICO claim against Lewie Moeller failes because FFP has not plead the existence of an "enterprise", nor that Lewie Moeller participated in the operation or management of the enterprise itself.**

RICO is a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir. 2006). Congress never intended RICO to be employed to allow plaintiffs to turn garden-variety state law fraud cases into RICO claims. *Jennings v. Auto Meter Products, Inc.,* 495 F.3d 466, 472 (7th Cir. 2007).

RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). The Supreme Court defined an "informal association-in-fact" as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle* at 946. Under *Boyle*, a plaintiff must simply demonstrate three basic structural features in order to establish an enterprise: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to continue to pursue the enterprise's purpose." *Id.*

In its Complaint, FFP has plead itself as the enterprise. (Complaint ¶66). FFP attempts to create an "association-in-fact" with Lewie Moeller at paragraph 73 wherein FFP states: "Lewie Moeller, who was associated with FFP, conducted and participated in FFP's affairs directly and indirectly through this pattern of racketeering activity." FFP's attempt to create an enterprise fails because there is no common purpose to engage in a course of conduct as between FFP and Lewie Moeller. Lewie Moeller had no control over FFP in 2010 or 2011.

One must have some part in directing an enterprise's affairs in order to participate, directly or indirectly, in the conduct of such affairs. The "operation or management" test expresses this requirement in a formulation that is easy to apply. *Reves v Ernst & Young*, (1993)

507 U.S. 170.177, 113 S.Ct. 1163, 122 L.Ed.2d 525.  In other words, one must participate in the operation or management of the enterprise itself in order to be subject to §1962(c) liability.  *Id.*  The "operation or management" test is consistent with the proposition that liability under §1962(c) is not limited to upper management.  "Outsiders" having no official position with the enterprise may be liable under §1962(c) if they are "associated with" the enterprise and participate in the operation or management of the enterprise.  *Id*. at 184.

FFP's RICO claim fails because Lewie Moeller had no official or unofficial position with FFP wherein he participated in the operation or management of the enterprise during 2010 and 2011.  FFP specifically stated in its Complaint that Lewie Moeller relinquished all ownership interests on September 29, 2006.  (Complaint ¶9).  Lewie Moeller existed his position as President and Director of the companies on or about October 10, 2005.  (Complaint ¶11).  Lewie Moeller returned as President and Chief Executive Officer of the companies from January 1, 2012 to December 24, 2012.  (Complaint ¶5).  During all times pertinent to FFP's RICO allegations Lewie Moeller had no participation in the operation or management of the enterprise, FFP.  Thus, Lewie Moeller has no liability under §1962(c) and FFP's RICO claim against him must be dismissed.

**D.  In the alternative to outright dismissal, the doctrine of abstention applies to the matter *sub judice* and thus this District Court should defer the matter to state court.**

The so-called *Colorado River* abstention doctrine permits federal courts to defer to a "concurrent state proceeding" as a matter of "wise judicial administration."  *Colorado River Water Conservation District v. United States*, (1976) 424 U.S.800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483.  The doctrine comes into play when parallel state court and federal court lawsuits

11

are pending between the same parties. The prudential doctrine is a matter of judicial economy, but the Supreme Court cautioned at the birth of this doctrine that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for [other theories of] abstention." *Id.*

Determining whether the *Colorado River* abstention doctrine should apply requires a district court to make a two-part inquiry. Upon motion, the district court must first determine that the concurrent state and federal actions are actually parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339, (6th Cir. 1998) (further citations omitted.) If so, the district court must consider second, whether "exceptional circumstances" justify abstention. *Id.* at 340.

Two suits are parallel for *Colorado River* purposes when substantially the same parties are contemporaneously litigating substantially the same issues. *Baskin v. Bath Tp. Bd. of Zoning Appeals,* 15 F.3d 569, 571 (6th Cir. 1994). In essence, the question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. See *Romine* at 339. "[E]xact parallelism" is not required; '[i]t is enough if the two proceedings are substantially similar." *Romine* at 340, further citations omitted.

There are two separate state court cases, pending in the Allen County Court of Common Pleas, Allen County, Ohio, which involve the exact same facts, events and occurrences outlined in FFP's RICO claim against Lewie Moeller in FFP's Complaint filed in this District Court on March 28, 2014.[1] Attached hereto and incorporated by reference as Exhibit A is a copy of FFP's

---

[1] While not of significance to this case, a third state case is pending appeal between the parties regarding a will contest action.

Second Amended Counterclaims Against Charles Moeller filed on May 15, 2013, that being Case No.: CV2013 0065. The state trial court granted FFP's motion to file its amended counterclaims on May 21, 2013. Attached hereto as Exhibit B and incorporated by reference is a copy of FFP's Complaint for Breach of Contract, Breach of Fiduciary Duties and Conversion With Jury Demand Endorsed Hereon filed subsequently on July 30, 2013, that being Case No.: CV2013 0534.

The history of this entire course of litigious folly began when Lewie Moeller was terminated on December 24, 2012 without cause as President of Ohio Decorative Products, Inc., Flexible Foam Products, Inc., Nu-Foam Products, Inc., Moeller Transport Leasing, Inc., and Blue Stream Dairy, Inc. (hereinafter, collectively "companies")  Lewie Moeller filed suit for the breach of his express written employment contract on January 29, 2013, Case No.: CV2013 0065. In retaliation, Lewie Moeller's four sisters authorized the filing of the Amended Counterclaims in Case No.: CV2013 0065 and the subsequent case against the Estate of Charles Diller Moeller in Case No.: CV2013 0534. Each of these cases sets forth identical facts, events and occurrences as set forth in FFP's RICO claim in the matter *sub judice*. The theories of recovery are identical. The same relief is sought. The same issues are being litigated. Further, the resolution of the state court litigation will dispose of FFP's federal RICO claim against Lewie Moeller. The three suits involve substantially the same parties and are contemporaneously litigating substantially the same issues. Therefore, the concurrent two state actions and this federal action are parallel.

The second inquiry for the District Court must consider is whether "exceptional circumstances" justify abstention. The Supreme Court has identified eight factors, four in

13

*Colorado River* and four in subsequent decisions, that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of a state court. *PaineWebber Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001), citing *Romine* at 341. These considerations are: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation;... (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Id.* When considering these factors, Lewie Moeller recognizes that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *PaineWebber* at 207, citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* (1983) 460 U.S. 1, 16, 103 S. Ct. 927, 74 L.Ed.2d 765.[2]

    The first factor supports abstention in that the state court has exercised jurisdiction over the property in the Estate of Charles Diller Moeller, Case No.: CV2013 0534. Much of this property is located in Allen County, Ohio, where the state court is located. Further, FFP's corporate headquarters, as well as the other companies, is also located in Allen County, Ohio.

    The second factor also supports abstention in that the federal forum is less convenient to the parties. The parties are all located in Allen County, Ohio where state court is situated. This

---

[2]*Moses H. Cone* was superseded by the Federal Arbitration Act. U. S. C. §16(a)(1)(A), which did not affect its discussion about abstention.

means that almost all of the discovery, including party depositions, employee depositions and witnesses are also located in Allen County, Ohio. The District Court is located in Toledo, Ohio which is more than one hour from Lima, Allen County, Ohio.

      The Supreme Court noted the "consideration that was paramount in *Colorado River* itself–the danger of piecemeal litigation." *PaineWebber* at 343, citing *Moses H. Cone* at 19. Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results. *PaineWebber* at 343, citing *LaDuke v. Birlington Northern R.R. Co.,* 879 F.2d 1556, 1560 (7th Cir. 1989). Emphasis is placed on the third factor considered by the District Court in its abstention consideration.

      In the case at bar, the outcome of both the two state court actions and the federal court action depends on the resolution of the exact same issue: whether or not Lewie Moeller with the consent and approval of his father, Chuck Moeller, received monies from FFP without providing the claimed consulting services. The basis of all three suits rests on the outcome of this issue no matter how you characterize the facts or causes of action. To that end, the threat of piecemeal results is very real. Thus, the third factor for consideration supports a finding that abstention is appropriate.

      Further, it is believed by Lewie Moeller that his sisters, individually and through the companies as the vehicles used to file their claims, are litigious so as to intimidate him, harass him, and increase his costs in attorneys fees and expenses. "The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamemanship or that result in conflicting adjudications." *PaineWebber* at 343.

15

Chronologically, the state court cases were filed in 2013, several months prior to the federal RICO claim against Lewie Moeller.  Answers to the Complaint and Counterclaims have been filed and the parties have entered into Protective Orders in both state cases.   Over 16,600 documents have been exchanged in the discovery process as well.  The order of filing and the progress of the state court actions favor abstention.

The fifth factor requires an analysis of whether the source of governing law is state or federal.   As previously set forth, the basis of these suits involves an oral agreement made between FFP by Chuck Moeller as its President and Hume Supply.  The issue of whether Lewie Moeller was appropriately paid for consulting services must also be resolved.  These issues are based upon state law.  While FFP attempts to couch these issues as a violation of federal RICO, they are factually resolved on the basis of state law.

State courts are very adept at resolving contract claims.  Thus the interests of FFP is well protected.  As stated previously, the state court actions have progressed somewhat into the discovery stage.  Thus, the sixth and seventh factors in the abstention analysis favors abstention.

The last and eighth factor focuses on the presence or absence of concurrent jurisdiction. While a civil RICO claim brought pursuant to 18 U.S.C §1961 *et. seq.* does not provide for concurrent jurisdiction in state court, the issues presented involving the oral agreement do. Additionally, FFP has set forth a state RICO claim.  State courts have jurisdiction to resolve such a claim if it is determined to be a viable claim.

## CONCLUSION

For all the above reason, FFP's Complaint should be dismissed as to its federal RICO claim and the District Court should further refuse to exercise jurisdiction over the remaining state

law claims. In the alternative, if the federal RICO claim is not dismissed, then FFP's Complaint should be held in abeyance pursuant to the Colorado River doctrine pending the outcome of the currently pending state cases CV 2013 0065 and CV 2013 0534.00

        Respectfully submitted,
        RUMER & MAISCH CO., LLC

        /s/ Victoria Maisch Rumer
        Victoria Maisch Rumer, (0063440)
        and

        /s/ Michael A. Rumer
        Michael A. Rumer, (0006626)
        and

        /s/ Zachary D. Maisch
        Zachary D. Maisch, (0085926)
        and

        /s/ Andrea M. Brown
        Andrea M. Brown, (0089451)
        212 N. Elizabeth Street, Suite 410
        Lima, Ohio 45801
        Telephone: 419-228-7640
        Facsimile: 419-228-6214
        Email: mrumer@rmcolaw.net
                vmaisch@rmcolaw.net
                zmaisch@rmcolaw.net
                abrown@rmcolaw.net
        ATTORNEYS FOR DEFENDANT
        CHARLES L. MOELLER

## PROOF OF SERVICE

    This is to certify that on the 27th day of May, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        /s/ Victoria Maisch Rumer
        Victoria Maisch Rumer